Case No. 7,173.

The JAMAICA.

[11 N. Y. Leg. Obs. 242.]

District Court, S. D. New York. 1853.

was at the time unobstructed, except by the vessels which came in collision. The sloop Atlas was proceeding down Buttermilk Channel, on a trip to the southeastern shore of Staten Island, and those in charge of the steam ferry-boat Jamaica were probably aware that the master of the sloop was intending to pass through the channel, and to take the Governor's Island side, with a view of keeping as far to the windward as practicable, in order easily to clear the point at Red Hook. The steamer's course was across the channel (but heading up against the ebb-tide), from the foot of Hamilton avenue to her landing at Whitehall, and both wind and tide were favorable to the perfect control of the steamer, in attempting to pass to the right and under the stern of the sloop. It was easy for the steamer to do so at the time she left her dock, and such was her obvious course and duty. But if there had been the least doubt of her being able to pass at a safe distance under the stern of the sloop at the time the Jamaica was about to leave her dock, she should have delayed for a single minute, during which time the sloop (at the rapid rate she was then running) would have been much below the line over which the steamer was ordinarily run before the latter could have crossed the track of the Atlas. But there was no need of delay. The steamer, with wind and tide favorable to its perfect command, might with ordinary care have easily avoided the collision, and it was the right of the sloop to keep her course, and the clear duty of the steamer to avoid her. The sloop had, before the collision occurred, passed much below the line of the steamer's usual course, and it is impossible to resist the conclusion that there was culpable negligence, or want of skill, on the part of those in charge of the steamer. They seem to have acted upon the supposition, that it was the duty of the sloop to change her course to avoid the collision; and it was urged on the hearing that she should have done so immediately before the collision occurred, and should have run in still nearer to Governor's Island, for the purpose of avoiding the steamer. The sloop was then as near to the island as her master deemed it prudent to go; and, considering the width of the channel, the relative position and course of the respective vessels, and the fact that one had the advantage of steam power, with a favorable wind and tide, I deem it quite certain that it was not the duty of those on board the sloop to change her course, as contended for by the respondents.

It was also urged, on the part of the respondents, that the sloop had not a sufficient lookout, and that if a sufficient lookout had been kept, she might have luffed, and thus avoided the collision. From the testimony of the master and crew of the sloop, I am quite satisfied that after the probability of collision became apparent, the

E. Ketchum and W. Q. Morton, for libellants.

J. P. Rolfe and William Rockwell, for the Jamaica.

HALL, District Judge. The collision in this case occurred at midday in a channel about two thousand feet in width, and which

sloop could not have luffed without danger of running aground; a risk which, under the circumstances of the case, it was not the duty of the master of the sloop to encounter. The master of the sloop appears to have relied upon those navigating the steamer to take the measures necessary to avoid a collision, and his lookout seems to have been kept solely with a view to guard against danger from the windward. He was running near to the shore, for the purpose of keeping as far as practicable to the windward of Red Hook, and he appears to have thought it necessary to guard against the dangers of the reef at the southwesterly point of Governor's Island (a reef he was then rapidly approaching), rather than against the danger of collision with the steamer on the opposite side, when it was the obvious duty of those in charge of the steamer to take efficient means to render a collision impossible. He had seen the steamer, and assured himself that she had ample room in the wide and unobstructed channel, and had, I think, a right to assume that the steamer would follow the rule of navigation applicable to the circumstances, and pass at a safe distance to the right and under his stern.

After a careful consideration of the case, I am not able to say that the omission of the master of the sloop to sustain a lookout to the leeward was a fault requiring an apportionment or division of the damages in this case. The duty of those in charge of the steamer was so clear and palpable, it was so obvious that the exertion of ordinary care on their part would certainly prevent all danger of collision, that the master of the sloop was justified in directing his attention to the shore and reef on the opposite side of his vessel, and in leaving to the master of the steamer the whole duty of avoiding a collision between the sloop and steamer. If the pilot of the steamer saw that the sloop was a bad steering vessel, or was uncertain of her course, he should have given her a wider berth by heading up the channel, instead of allowing the steamer to float with the tide until there was danger of a collision, and then heading her on to the sloop as much as possible, that the steamer's side might be secured against the impending blow. I am unable to perceive that the master of the sloop had any reason to apprehend that an attempt would be made to run the steamer out of her accustomed course, and incur the hazard of passing across the bows of the sloop (which, with a fresh wind and favoring tide, was running at a very rapid rate, and about crossing the steamer's track), when it was apparent that the steamer could pass under the stern of the sloop with great ease and perfect safety.

In my judgment, the libellants are entitled to a decree for their damages and costs, and the usual order for a reference, to ascertain the amount of such damages will be entered.